**D. Wesley Cornish, Esquire**                               **JURY DEMAND**
**Id #: 310865**                                             Damage Assessment Required
**Cornerstone Legal Group, LLC**
**1510 Cecil B. Moore Avenue, Suite 301**
**Philadelphia, PA 19121**                                   **Attorney for Plaintiffs**

**IN AND FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

---

*Plaintiff*

**ALEXIS SANTIAGO, MARGARITA SANTIAGO, AND EXOR SANTIAGO**,

Case No._____

VS.

*Defendants*

**PHILADELPHIA POLICE OFFICER CHRISTOPHER HULMES BADGE #7548, PHILADELPHIA POLICE OFFICER JAMES REILLY BADGE #1784, PHILADELPHIA POLICE OFFICER PATRICK BANNING, PHILADELPHIA POLICE OFFICER SERGEANT DIDONATO BADGE NUMBER 8543, POLICE OFFICER MCCAULEY BADGE #5026, CITY OF PHILADELPHIA, PHILADELPHIA POLICE OFFICER ELLINGSWORTH BADGE #5349, PHILADELPHIA POLICE OFFICER LISTER BADGE #7545, PHILADELPHIA POLICE OFFICER LYNCH BADGE #1386, PHILADELPHIA POLICE OFFICER JONES BADGE #9851, PHILADELPHIA POLICE OFFICER FLYNN BADGE #2638, PHILADELPHIA POLICE OFFICER SERGEANT GIULIAN BADGE #8838, PHILADELPHIA POLICE OFFICER TAYLOR BADGE #5371, PHILADELPHIA POLICE OFFICER CHRISTOPHER BROOKS, PHILADELPHIA POLICE OFFICER WRIGHT BADGE #6123, POLICE COMMISSIONER CHARLES RAMSEY FIRST DEPUTY COMMISSIONER RICHARD ROSS JR., DEPUTY COMMISSIONER KEVIN BETHEL, DEPUTY COMMISSIONER THOMAS WRIGHT, DEPUTY COMMISSIONER WILLIAM BLACKBURN, DEPUTY COMMISSIONER DENISE TURPIN, PHILADELPHIA POLICE CHEMISTS JOHN DOE 1-6, , PHILADELPHIA POLICE CHEMISTS JANE DOE 1-6, PHILADELPHIA POLICE OFFICERS JOHN DOES 1-15, PHILADELPHIA POLICE OFFICERS JANE DOES 1-15**; officially, personally and all together individually, personally, joint, and severally.

---

**D. Wesley Cornish, Esquire**                    **JURY**
**Id #: 310865**                                   Damage Assessment Required
**Cornerstone Legal Group, LLC**
**1510 Cecil B. Moore Avenue, Suite 301**
**Philadelphia, PA 19121**                         **Attorney for Plaintiffs**

## IN AND FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

*Plaintiff*

**ALEXIS SANTIAGO, MARGARITA SANTIAGO, AND EXOR SANTIAGO,**

Case No._____

VS.

*Defendants*

**PHILADELPHIA POLICE OFFICER CHRISTOPHER HULMES BADGE #7548, PHILADELPHIA POLICE OFFICER JAMES REILLY BADGE #1784, POLICE OFFICER PATRICK BANNING, PHILADELPHIA POLICE OFFICER SERGEANT DIDONATO BADGE NUMBER 8543, POLICE OFFICER MCCAULEY BADGE #5026, CITY OF PHILADELPHIA, PHILADELPHIA POLICE OFFICER ELLINGSWORTH BADGE #5349, PHILADELPHIA POLICE OFFICER LISTER BADGE #7545, PHILADELPHIA POLICE OFFICER LYNCH BADGE #1386, PHILADELPHIA POLICE OFFICER JONES BADGE #9851, PHILADELPHIA POLICE OFFICER FLYNN BADGE #2638, PHILADELPHIA POLICE OFFICER SERGEANT GIULIAN BADGE #8838, PHILADELPHIA POLICE OFFICER TAYLOR BADGE #5371, PHILADELPHIA POLICE OFFICER CHRISTOPHER BROOKS, PHILADELPHIA POLICE OFFICER WRIGHT BADGE #6123, POLICE COMMISSIONER CHARLES RAMSEY FIRST DEPUTY COMMISSIONER RICHARD ROSS JR., DEPUTY COMMISSIONER KEVIN BETHEL, DEPUTY COMMISSIONER THOMAS WRIGHT, DEPUTY COMMISSIONER WILLIAM BLACKBURN, DEPUTY COMMISSIONER DENISE TURPIN, PHILADELPHIA POLICE CHEMISTS JOHN DOE 1-6, , PHILADELPHIA POLICE CHEMISTS JANE DOE 1-6, PHILADELPHIA POLICE OFFICERS JOHN DOES 1-15, PHILADELPHIA POLICE OFFICERS JANE DOES 1-15**; officially, personally and all together individually, personally, joint, and severally.

## VERIFIED COMPLAINT

1. Plaintiffs Exor Santiago ("Santiago, E"), Margarita Santiago ("Santiago, M"), and Alexis Santiago ("Santiago, E"),by and through counsel, D. Wesley Cornish, Esquire, states as follows:

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question) and the Civil Rights Act of 1871, 42 U.S.C. §§1983, 1985, and 1988.

3. This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that Defendants reside in this district and virtually all of the acts described in this Complaint occurred in this district.

## PLAINTIFF

5. Plaintiff is Alexis Santiago, an individual and resident of the Commonwealth of Pennsylvania with an address of 445 East Indiana Avenue Philadelphia, Pennsylvania 19134.

6. Plaintiff is Margarita Santiago, an individual and resident of the Commonwealth of Pennsylvania with an address of 445 East Indiana Avenue Philadelphia, Pennsylvania 19134.

7. Plaintiff is Exor Santiago, an individual and resident of the Commonwealth of Pennsylvania with an address of 445 East Indiana Avenue Philadelphia, Pennsylvania 19134.

## DEFENDANTS

8. Defendant is Christopher Hulmes Badge Number 7548, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

9. Defendant is James Reilly Badge Number 1784, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

10. Defendant is Patrick Banning Badge Number unknown, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

11. Defendant is Sergeant Didonato Badge Number 8543, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

12. Defendant is Officer McCauley Badge Number 5026, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

13. Defendant is Officer Wright Badge Number 6123, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

14. Defendant is Christopher Brooks Badge number unknown, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

15. Defendant is Officer Taylor Badge Number 5371, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

16. Defendant is Officer Lister Badge Number 7545, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

17. Defendant is Officer Jones Badge Number 9851, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

18. Defendant is Officer Ellingsworth Badge Number 5349, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

19. Defendant is Officer Lynch Badge Number 1386, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

20. Defendant is Officer Flynn Badge Number 2638, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

21. Defendant is Sergeant Giulian Badge Number 8838, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

22. Defendant is the City of Philadelphia, a city of the first class, organized and existing pursuant to the laws of the Commonwealth of Pennsylvania, the Philadelphia Home Rule Charter and Philadelphia Code, with offices located at City Hall 1501 Market Street Room 215, Philadelphia, PA 19107.

23. Defendant is Charles Ramsey, the duly appointed Police Commissioner of the Philadelphia Police Department with principal offices located in the Police Administration Building, 8th and Race Streets, Philadelphia, PA 19107.

24. Defendant is First Deputy Commissioner Richard Ross, Jr. c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

25. Defendant is Deputy Commissioner Kevin Bethel, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

26. Defendant is Deputy Commissioner Thomas Wright c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

27. Defendant is Deputy Commissioner William Blackburn, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

28. Defendant is Deputy Commissioner Denise Turpin, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

29. Defendant is Philadelphia Police Department Chemists John Does 1-6, each is a police chemist for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

30. Defendant is Philadelphia Police Department Chemists Jane Does 1-6, each is a police chemist for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

31. Defendant is Philadelphia Police Officers John Does 1-15, each is a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

32. Defendant is Philadelphia Police Officers Jane Does 1-15, each is a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

## **FACTUAL BACKGROUND**

33. On or about Thursday April 25, 2013 Defendants and their agents, employees, and subordinate officers arrested Plaintiffs Alexis Santiago[1], Margarita Santiago, and Exor Santiago[2] along with Mariana Sanchez[3], Jonathan Davis[4], Joel Cruz[5], Annamarie Walters[6], Joshua Morales[7], Adalberto Rodriguez Morales[8], for possession of a controlled substance with intent to distribute and related offenses.

34. At Plaintiffs Santiago, A and Santiago, E, joined preliminary hearings the Commonwealth of Pennsylvania via the Philadelphia District Attorney's Office and more specifically Assistant District Attorney Holland, presented testimony from Police Officer Christopher Hulmes to establish probable cause to hold the case for court[9].

35. Based upon Officer Christopher Hulmes testimony Assistant District Attorney Holland  presented and the Honorable Bradley Moss accepted into evidence all the relevant police paperwork[10].

36. Officer Hulmes' testimony and paperwork implicated all Plaintiffs in criminal conduct[11].

37. Officer Hulmes testified on or about Thursday April 25, 2013 at approximately 6:30pm, he was working as a Philadelphia Police Officer in the area of D and Indiana Streets in the City and County of Philadelphia[12].

---

[1] **CP-51-CR-0008135-2013 & MC-51-CR-0016064-2013**
[2] **CP-51-CR-0008132-2013 & MC-51-CR-0016059-2013**
[3] **CP-51-CR-0008136-2013 & MC-51-CR-0016068-2013**
[4] **MC-51-CR-0016040-2013**
[5] **CP-51-CR-0008133-2013 & MC-51-CR-0016060-2013**
[6] **MC-51-CR-0016057-2013**
[7] **MC-51-CR-0016067-2013**
[8] **CP-51-CR-0008134-2013 & MC-51-CR-0016062-2013**
[9] N.T. 6/21/2013
[10] N.T. 6/21/2013
[11] *See* Exhibit 1
[12] N.T. 6/21/2013 5:15-24

38. At 6:30pm that same night he received a phone call at his narcotics strike force headquarters, it was very specific information, and at that time he took his squad car to the area of D and Indiana[13].

39. Officer Hulmes testified himself and Officer Riley were in an unmarked vehicle and proceeded through the intersection of D and Indiana[14].

40. At the intersection of D and Indiana Officer Hulmes observed Plaintiff Exor Santiago wearing a blue and white Polo shirt that night and jeans[15].

41. Officer Hulmes observed Exor Santiago speaking with two males corroborating part of the information he received earlier[16].

42. Officer Hulmes observed Exor Santiago speaking in the northwest corner of the street with Adalberto Rodriguez Morales and Joshua Morales[17].

43. Officer Hulmes proceeded through the intersection and turned left onto Hurley Street, which is approximately 40 to 50 feet from D Street and he parked right at the corner[18].

44. As Officer Hulmes was parking he observed Maryanna Martinez wearing a blue hooded sweatshirt and grey shorts looked into the vehicle for a few seconds and then she immediately pointed at the unmarked vehicle and started to yell to a group of females and males, which included some children she was standing with at 451 Indiana Avenue "that boy is a cop, he locked me up"[19] as she did when she returned with Joshua Morales, Adalberto Rodriguez Morales, and Exor Santiago[20].

45. In contrast, Officer Hulmes later testified on cross-examination he was not 100% sure and Ms. Martinez could have been standing in front of 455 Indiana Avenue[21].

---

[13] N.T. 6/21/2013 6:3-8
[14] N.T. 6/21/2013 6:8-11
[15] N.T. 6/21/2013 6:12-16
[16] N.T. 6/21/2013 6:15-17
[17] N.T. 6/21/2013 6:16-24
[18] N.T. 6/21/2013 6:25, 7:1-5
[19] Exhibit 1; N.T. 6/21/2013 7:5-22
[20] N.T. 6/21/2013 8:8-10
[21] N.T. 6/21/2013 27:2-21

46. While Ms. Martinez was yelling Officer Reilly, per Officer Hulmes' direction, exited the vehicle[22] and Officer Hulmes secreted himself in the back seat area of the van, which had windows all around the vehicle all of which except for the windshield were tinted and provided an obscured darkened view[23].

47. Ms. Martinez walked eastbound to the intersection of D and Indiana where she met with Adalberto Rodriguez Morales, Joshua Morales, and Exor Santiago and began to point at the Officer Hulmes' vehicle and walked back with all three males[24].

48. Upon returning Ms. Martinez was pointing to Officer Reilly when she made the comments about a person exiting the vehicle being a law enforcement agent[25].

49. Adalberto Rodriguez Morales, who was wearing a white t-shit, and also had a black shirt draped over his shoulder and followed Officer Reilly about 20 to 30 feet behind the law enforcement agent[26].

50. Adalberto Rodriguez Morales put the black shirt draped over his shoulder over his head and continued to follow Officer Reilly[27].

51. Officer Reilly turned his police radio off when he exited the vehicle and kept it that way, so Officer Hulmes placed a cellular phone call to Officer Reilly and said "listen the one male is following you out of the area they got to the area"[28].

52. Officer Reilly informed Officer Hulmes, to head to the area of D and Cambria which is the next block down off of Hurley Street and that is when Adalberto Rodriguez Morales turned around and started coming back which Officer Hulmes observed within seconds while in constant phone contact with Officer Reilly[29].

---

[22] N.T. 6/21/2013 8:4-7
[23] Exhibit 1; N.T. 6/21/2013 8:16-17; 27:17-25; 28:1-24
[24] N.T. 6/21/2013 7:22-25, 8:4
[25] N.T. 6/21/2013 8:8-13
[26] N.T. 6/21/2013 8:5-23
[27] N.T. 6/21/2013 8:23-25
[28] N.T. 6/21/2013 9:2-6
[29] N.T. 6/21/2013 9:6-24

53. Adalberto Rodriguez Morales walked past the vehicle and started looking in the front window on the driver side then crossed back over to the passenger side window and started looking in the window putting his hands up to the window of the vehicle Officer Reilly exited and Officer Hulmes was secreted in the back seat area[30].

54. After looking into the vehicle Adalberto Rodriguez Morales walked north and spoke with Joshua Morales and Exor Santiago and all three individuals began to stare at the unmarked vehicle[31].

55. Officer Hulmes instructed Officer Reilly to remain out of the area until he could ascertain what exactly was happening[32].

56. Ms. Martinez went back to 451 Indiana Avenue where she stood with another group of people outside the premises[33].

57. Joshua Morales and Adalberto Rodriguez Morales eventually walked eastbound and went to the northwest corner again of D and Indiana streets[34].

58. Exor Santiago walked to 445 Indiana Avenue and continued staying with people who were out on the front step and engaged in conversation[35].

59. Two males, identified as Joel Cruz (De la Cruz) and Plaintiff Alexis Santiago, engaged in a conversation with Exor Santiago all while looking at the vehicle[36].

60. Joel Cruz and Alexis Santiago ended their conversation and got into a gold Mercury, Pennsylvania tags HWX-2987[37], parked east of the unmarked police vehicle's location and Officer Hulmes overheard Cruz tell Alexis Santiago "we are going to check the area around"[38].

---

[30] N.T. 6/21/2013 10:2-10
[31] N.T. 6/21/2013 10:11-14
[32] N.T. 6/21/2013 10:15-17
[33] N.T. 6/21/2013 10:18-19
[34] N.T. 6/21/2013 10:20-22
[35] N.T. 6/21/2013 10:22-25
[36] N.T. 6/21/2013 11:1-9
[37] Exhibit 1
[38] N.T. 6/21/2013 11:9-14

61. Officer Hulmes immediately alerted his back-up officers and said "listen, guys, you got to back up, everyone has to back up, they are going to come look for you[39].

62. Officer Hulmes observed Cruz and Alexis Santiago get into the gold Mercury and begin driving away from the area westbound on Indiana Avenue and was operated by Alexis Santiago[40].

63. Officer Hulmes had Officer Patrick Banning in an unmarked vehicle follow the car Alexis Santiago operated[41].

64. Shortly thereafter, Officer Hulmes observed a white female later identified as Anne Marie Walters, wearing a purple valor sweat suit, with a pocket inside it, approached the intersection of D and Indiana and engaged Adalberto Rodriguez Morales and Joshua Morales in a conversation and thereupon handed United States currency to Adalberto Rodriguez Morales who walked to the South side of Indiana Avenue and went to the curb line, retrieving objects from the curb line area[42].

65. Adalberto Rodriguez Morales, returned to where he was engaged in conversation with Ms. Walters and handed those objects retrieved from the curb line to the white female who immediately left the area[43].

66. Officer Hulmes provided Ms. Walters description to back-up Officer McCauley, who was also in an unmarked vehicle, and Officer McCauley followed Ms. Walters out of the area and she was later stopped by Officer Ellingsworth, who recovered from her one packet of crack cocaine with a superman logo on it and the results of a field test yielded a positive result and the evidence was placed on Property Receipt 3099557[44].

67. Officer Hulmes observed the gold Mercury operated by Alexis Santiago reenter the area where the vehicle he was inside was parked, and Alexis Santiago got out of the driver's side and Mr. Cruz got out

---

[39] N.T. 6/21/2013 11:15-18
[40] N.T. 6/21/2013 11:19-20; 12:1-8
[41] N.T. 6/21/2013 12:9-10
[42] N.T. 6/21/2013 12:11-20; 31:3-8
[43] N.T. 6/21/2013 12:21-23
[44] N.T. 6/21/2013 12:23-25; 13:1-9

of the passenger side and both Mr. Cruz and Alexis Santiago walked westbound and spoke with

Adalberto Rodriguez Morales and Joshua Morales[45].

68. Adalberto Rodriguez Morales, Joshua Morales, Alexis Santiago, and Joel Cruz were all pointing and

looking in different directions while engaging in conversation at which point Mr. Cruz and Alexis

Santiago came over to the vehicle Officer Hulmes drove to the scene and both Mr. Cruz and Alexis

Santiago tried to open the front and rear passenger side doors, while Alexis Santiago tried both front

doors[46].

69. Officer Hulmes could hear a conversation between Mr. Cruz and Alexis Santiago, while he was trying to

lay still in the rear seat, and Alexis Santiago said "it is too dark in there" and Mr. Cruz said "look in the

back, look in the back" and while conversing about the vehicle both males walked around and looked

into the front of the vehicle and one of those males stood on the front bumper looking in through the

front windshield[47].

70. Mr. Cruz and Alexis Santiago walked back and engaged in conversation with Exor Santiago at 445

Indiana Avenue, in the front area, and shortly thereafter Officer Hulmes observed a black male, later

identified as Jonathan Davis, walk from east to west and engage both Adalberto Rodriguez Morales,

Joshua Morales on the northwest corner D and Indiana streets[48].

71. Adalberto Rodriguez Morales crossed over to the south side of Indiana and D retrieving objects from the

curb side[49].

72. Adalberto Rodriguez Morales came back across the street and handed the unknown items retrieved from

the curb side, to Jonathan Davis, in exchange for United States currency, at which point Mr. Davis left

the area and Officer Hulmes provided back-up officers with Mr. Davis' description[50].

[45] N.T. 6/21/2013 13:10-18
[46] N.T. 6/21/2013 13:19-25; 14:1-2
[47] N.T. 6/21/2013 14:3-15
[48] N.T. 6/21/2013 14:16-25
[49] N.T. 6/21/2013 14:25; 15:1-2

73. Officer Lister stopped Mr. Davis and recovered from him one clear packet of crack cocaine with a superman logo and this material was field tested and it yielded a positive result and was placed on Property Receipt 3099558[51].

74. Mr. Cruz then entered the passenger side of the previously described gold Mercury and Alexis Santiago got into the driver's seat and the vehicle exited the area at which point Officer Hulmes provided a description to back-up Officers Jones and Lynch who will in constant radio contact with Officer Hulmes stopped the vehicle in the area of D and Westmoreland streets and confiscated from Alexis Santiago $259 in United States currency, placed on Property Receipt 3099560, and Officer Lynch stopped and arrested Mr. Cruz and recovered from him $137 in United States currency and placed it on Property Receipt 3099599[52].

75. Meanwhile, Exor Santiago, was looking in Adalberto Rodriguez Morale's and Joshua Morales' direction and after the vehicle Alexis Santiago was operating was stopped made a across his throat with his fingers in a slicing or cutting motion while still standing with a group in front of 445 Indiana Avenue[53].

76. Adalberto Rodriguez Morales walked to the south side of D and Indiana streets and retrieved objects from the ground and placed them into his pocket while Joshua Morales, retrieved and placed into his pocket unknown objects on the ground at the curb side of the streets north side at which point Joshua Morales began walking westbound on the north side of Indiana Avenue taking United States currency from his pocket[54].

---

[50] N.T. 6/21/2013 15:4-7
[51] N.T. 6/21/2013 15:8-13
[52] N.T. 6/21/2013 15:14-25; 16:1-7
[53] N.T. 6/21/2013 16:8-14; Exhibit 1
[54] N.T. 6/21/2013 16:15-23

77. Joshua Morales stopped in front of 445 Indiana Avenue and handed United States currency to Exor Santiago while Adalberto Rodriguez Morales walked northbound on D Street towards Officer Reilly who was already located on the 2900 Block of D Street[55].

78. Officer Hulmes alerted back-up Officers with a description of Maryanna Martinez, Adalberto Rodriguez Morales, Joshua Morales, and Exor Santiago and quickly thereafter back-up Officers converged on the 400 Block of D Street and Ms. Martinez entered a property on the block while Officer Hulmes directed officers to stop Joshua Morales as he began to walk west bound towards Boudinot Street[56].

79. Based on information received from Officer Hulmes, Officer McCauley did stop and arrest Joshua Morales and recovered 14 packets of alleged heroin stamped "Surprise" and $97 United States currency each later placed on Property Receipts 3099561 and 3099562[57].

80. While police were placing Joshua Morales into custody, Exor Santiago entered 445 Indiana Avenue with police following behind and as police were entering the property Exor Santiago was exiting via the back door and Officer Flynn and Sergeants Giulian and Didonato attempted to stop Exor Santiago who was now hiding in the rear yard of 447 Indiana Avenue[58].

81. As Officer Flynn was attempting to place Exor Santiago into custody an older Hispanic female, later identified as Margarita Santiago, jumped between Officer Flynn and Exor Santiago[59].

82. Officers warned Margarita Santiago, numerous times to leave the rear yard and continued to interfere with Officer Flynn attempting to put Exor Santiago into custody and she was placed into custody[60].

83. Exor Santiago was turned over to Officer Taylor, who confiscated $510 United States currency placed on Property Receipt 3099564 and Officer McCauley did recover from the rear yard of 445 Indiana Avenue one Rockstar energy drink with a false bottom which contained one clear baggie with 61 Xanax

---

[55] Exhibit 1
[56] Exhibit 1
[57] Exhibit 1
[58] Exhibit 1
[59] Exhibit 1
[60] Exhibit 1

also 1 clear baggie which contained 15 black tinted packets of alleged marijuana and all narcotics were placed on Property Receipt 3099563[61].

84. Based on information from Officer Hulmes, Officer Reilly did stop Adalberto Rodriguez Morales as he attempted to conceal himself behind parked vehicles as police converged on the block and after his arrest he was turned over to Officer Wright who arrested him after recovering one Newport cigarette box which contained 3 packets of alleged heroin stamped "surprise" and 16 packets of alleged crack with "Superman" symbols and were placed on Property Receipt 3099565 along with $126 United States currency which was placed on Property Receipt 3099566[62].

85. As police were leaving the area Officer Hulmes notified Officer Brooks that Maryanna Martinez was standing on the North side of Indiana Avenue at which point Officer Brooks arrested her and recovered nothing[63].

86. Officer Hulmes later identified all persons whom were arrested[64].

87. Officer Hulmes testified he was never further than 50-60 feet away from making the observations including the one involving Anne Marie Walters[65].

88. During Alexis Santiago's arrest, Plaintiff had more than $500 on him of which only $259 was placed into evidence on a property receipt and the remaining amount was stolen by the Officers involved in his investigation.

89. Alexis Santiago was also verbally abused and threatened by arresting Officers and told to answer questions or face physical harm.

90. Alexis Santiago was then physically assaulted by Officers Jones and Lynch for which he was injured on his head and upper body.

---

[61] Exhibit 1
[62] Exhibit 1
[63] Exhibit 1
[64] Exhibit 1
[65] N.T. 6/21/2013 29:12-22

91. Exor Santiago and Margarita Santiago were also verbally abused and threatened by arresting Officers Flynn, Hulmes, Giulian, and Didonato to cooperate or be physically harmed.

92. Exor Santiago and Margarita Santiago were then physically assaulted by Officers Flynn, Hulmes, Giulian, and Didonato for which they received numerous bodily injures.

93. During Exor Santiago's arrest, Plaintiff had more than $730 on him of which only $510 was placed into evidence on a property receipt and the remaining amount was stolen by the Officers involved in his investigation.

94. Numerous other Officers besides those listed in the Police Paperwork and testified to during court proceedings participated and allowed the unjust arrests of Margarita Santiago, Exor Santiago, and Alexis Santiago, and subsequent civil rights violations to occur without intervening or attempting to stop the offending Officers.

95. The evidence placed on the respective Property Receipts was examined and analyzed by the Philadelphia Police Department Chemistry Laboratory Chemists Jane and/or John Does 1-6 and presented in further criminal proceedings regarding these Plaintiffs.

96. The Defendants entered Alexis Santiago's vehicle where he had a reasonable privacy expectation and without his permission or consent and lacked probable cause before subjecting the property to a search without a warrant or an exigent circumstance.

97. The Defendants entered Alexis Santiago's, Exor Santiago's, and Margarita Santiago's house where he had a reasonable privacy expectation and without his permission or consent and lacked probable cause before subjecting the property to a search without a warrant or an exigent circumstance.

98. The Defendants entered Alexis Santiago's, Exor Santiago's, and Margarita Santiago's curtilage where he had a reasonable privacy expectation and without his permission or consent and lacked probable cause before subjecting the property to a search without a warrant or an exigent circumstance.

99. The Defendants questioned the Plaintiffs about alleged criminal activity while threatening to harm him, and without providing their *Miranda* rights at any time.

100.    On September 25, 2014 the Honorable Vincent Melchiorre, dismissed all charges against Exor Santiago.

101. On May 27, 2014 Alexis Santiago pled guilty to possession of a controlled substance and was sentenced to confinement for 8 to 16 months and probation to consecutively follow for a period of 8 to 16 months.

102. On  August 8, 2014 Philadelphia Police Officer, Patrick Banning was removed from street duty as he was under investigation by the Philadelphia Police Internal Affairs Department stemming from his role in the ***Rowland*** case. On August 6, 2014 Officer Banning's then partner Christopher Hulmes admitted to lying in a case where Officer Banning's signature is on the associated police paperwork including a search warrant application for Mr. Rowland's home and vehicle. Officer Hulmes has also been removed from active duty while Internal Affairs investigates his conduct.

103. Officers Banning, Reilly, and Hulmes have been partners and/or assigned to work together very often regarding narcotics investigations.

104. These Police Officers routinely stopped vehicles, entered and searched suspected drug dealers' properties, used threats and physical violence to steal property, cash, and drugs during the process.

105. On December 14, 2014, Alexis Santiago filed a Motion for a New Trial based on this after discovered evidence and his hearing is currently pending the criminal court assigning it a date.

106. Every accusation by the Police Officers against Exor Santiago, Alexis Santiago, and Margarita Santiago was false, and because these Officers conduct was unknown at the time forced the Plaintiffs to advance different legal defense strategies including pleading guilty in Alexis Santiago's case to a crime he never committed or participated with.

## COUNT I – ASSAULT & BATTERY

107. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

108. At all times relevant hereto, Defendants were acting under and pursuant to the color of law as employees and/or agents acting on behalf and/or pursuant to the supervision of Defendants City of Philadelphia, Charles Ramsey, Sergeant Didonato, Sergeant Giulian, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin.

109. To set forth a claim for Assault and Battery the Plaintiff must establish[66] a person: 1) Attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[67]; or 2) Negligently causes bodily injury to another with a deadly weapon[68]; or 3) Attempts by physical menace to put another in fear of imminent serious bodily injury[69]

110. Each Defendant at all relevant times owed a sworn duty and obligation to act in accordance with standard and accepted police policies and procedures and safeguard all suspected persons' civil rights, liberties, and privileges from unwarranted curtailment.

111. The Defendants collectively deprived while acting under color of law via their acts, omissions, conspiracies, lack of supervision, mismanagement, policies, customs, and improper training rights, privileges, and immunities belonging to Plaintiffs.

112. The Defendants under color of law violated at least the Plaintiff rights, privileges, and immunities to liberty, free assembly, equal protection, unreasonable search and seizure, due process, cruel and unusual punishment, freedom to move/travel, and to own property free from government removal without just compensation via their acts, omissions, conspiracies, lack of supervision, mismanagement, policies,

---

[66] 18 P.S. §2701
[67] Id.
[68] Id.
[69] Id.

customs, and improper training when these Police Officers failed at developing probable cause or procuring a truthful factually valid warrant before making an arrest absent exigent circumstances.

113. Defendants at all relevant times had a duty to uphold all Federal Constitutional and Statutory laws in addition to those imposed from the Commonwealth of Pennsylvania including safeguarding a person's right to be free from unreasonable search, seizures, arrest, and the like.

114. Defendants physically exerted control over Plaintiffs by grasping and seizing their bodies, striking them, and placing them into metal handcuffs.

115. The Defendants without reasonable cause, no warrant, and in clear violation of the Pennsylvania law regarding car searches which held Pennsylvania's liberty and freedom to a much higher standard than the Federal Constitution warranted and there was no good faith exception allowed for automobiles.

116. Defendants are liable for injuring Plaintiffs because Defendants without a warrant, nor any just or probable cause, searched, seized, handcuffed, questioned, and transported them to the police station for further processing

117. The Defendants physically struck Plaintiffs numerous times in addition to violently throwing them to the ground where the Defendants to effect an arrest where there was no resistance.

118. During the Defendants' assault, Plaintiffs had personal property searched and seized improperly and all without being properly accounted for on the submitted property receipts.

119. While Defendants restrained Plaintiffs via arrest, other Defendants physically struck Plaintiff's person against his will and without permission.

120. Defendants ignored the Plaintiff's numerous and repeated requests to stop hurting him and continued to physically strike Plaintiffs and threatened to do more serious harm if they reported to any other police officers what they witnessed.

121. Defendants physically menaced Plaintiffs and attempted through threats and the physical violence from reporting, testifying to, or otherwise disclosing the actions the Plaintiff witnessed the Defendants commit thereby violating their Federal and Commonwealth Constitutional rights.

122. As a result of the injuries sustained by Plaintiffs due to the Defendants combined behaviors while acting under color of law, allowing a pervasive municipal/city and law enforcement policy and custom of not closely regulating the Police Department's use of Confidential Informants during narcotics investigations, and failing to properly supervise those under their command to prevent numerous civil rights deprivations.

123. The Defendants assault and battery, their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia's, Richard Ross, Jr.'s, Kevin Bethel's, Thomas Wright's, Sergeant Giulian's, Sergeant Didonato's, William Blackburn's, Denise Turpin's, and Charles Ramsey's displayed deliberate indifference and reckless disregard to supervise, monitor and properly train narcotics officers with respect to their duty to provide only truthful information in securing search and arrest warrants, their duty to ensure that relationships with confidential informants are in accord with police department protocol, their duty to provide accurate and truthful information to the District Attorney's Office, their duty to report misconduct and illegal actions of other officers, and the fabrication of evidence against an accused to justify their illegal actions and conduct directly, foreseeably, legally, and proximately caused Plaintiffs' injuries.

124. Defendant City of Philadelphia has failed to properly discipline the defendant officers and other officers in the Police Department in cases involving violations of rights of civilians, including cases of improper searches, seizures, arrests, and prosecutions, thereby causing the violations in this case and this callous and reckless disregard authorizes Plaintiffs to seek punitive damages[70].

---

[70] *Smith v. Wade*, 103 S.Ct. 1625 (1983)

125. Philadelphia Officers have been engaged in a widespread pattern of systematic abuses of power including and not limited to assault related offenses for arresting Plaintiff but also for other crimes such as corruption, evidence falsification, perjury, Hobbs Act robbery, and racketeering.

126. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, Sergeant Didonato, Sergeant Giulian, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a. Past and future costs for medical treatment and care;

    b. Loss of past and future earnings and earning capacity;

    c. Loss of enjoyment of life;

    d. Loss of enjoyment of freedom;

    e. Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Sergeant Didonato, Officer McCauley, City of Philadelphia, Officer Ellingsworth, Officer Lister, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Giulian, Officer Taylor, Christopher Brooks, Officer Wright, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, Philadelphia Police Chemists John Doe 1-6, Philadelphia Police Chemists Jane Doe 1-6, Philadelphia Police Officers John Does 1-15, and Philadelphia Police Officers Jane Does 1-15 in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## <u>COUNT II – FALSE ARREST</u>

127. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

128. At all times relevant hereto, Defendants were acting under and pursuant to the color of law as employees and/or agents acting on behalf and/or pursuant to the supervision of Defendants City of Philadelphia, Charles Ramsey, Richard Ross, Jr., Sergeant Didonato, Sergeant Giulian, Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin.

129. To establish a claim for false arrest Plaintiff must demonstrate an arrest was made without probable cause[71]

130. At all relevant times Defendants had a duty to train, supervise, promulgate proper policies and customs, and only use probable cause supported by truthful facts before arresting, touching, searching, and seizing Plaintiffs and to ethically and honestly and ensure those standards are especially met confidential informants are utilized for illegal narcotics investigations.

131. At all relevant times Defendants had a duty to not arrest, search, and imprison every person(s) seen conducting a commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause for an arrest[72].

132. At all relevant times Defendants never observed either drugs or containers commonly known to hold drugs exchanged between the parties, thereby nullifying any probable cause to initiate an arrest and subsequent imprisonment[73].

133. Furthermore, at all relevant times Defendants did not observe multiple, complex, suspicious transactions as is also required to establish probable cause to make an arrest[74].

---

[71] *Brockington v. City of Phila.*, 354 F.Supp.2d 563, 572 n.10 (E.D.P.A. 2005)
[72] *Commonwealth v. Lawson*, 454 Pa. 23, 29 (1973); *see Commonwealth v. Greber*, 478 Pa. 63 (1978)
[73] *Commonwealth v. Dennis*, 417 Pa. Super 425 (Pa. Super. 1993)
[74] *Lawson*, 454 Pa. at  29

134. The Defendants knew Commonwealth law clearly demonstrated there was no probable cause because unlike *Commonwealth v. Dennis*[75], none of the Defendant Police Officers in the instant case were responding to a citizen's complaint or to a legitimate, uncorrupted, regulated, supervised, and officer trained informant's tip[76].

135. Plaintiffs complied with the Defendants commands, directions, and orders, because the Defendants were police officers acting under the color of law[77], and never attempted to flee, resist, or otherwise obstruct the Defendants' and therefore these facts eliminate another probable cause factor[78].

136. Defendants knowingly, intentionally, purposefully, and negligently failed to establish probable cause to determine Plaintiffs possessed controlled substances with the intent to deliver before without a warrant or exigent circumstance starting searching, seizing, physically striking, and improperly removing property from the Plaintiffs.

137. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, Sergeant Didonato, Sergeant Giulian, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    f.   Past and future costs for medical treatment and care;

    g.   Loss of past and future earnings and earning capacity;

    h.   Loss of enjoyment of life;

---

[75] *Dennis*, 417 Pa. Super 425
[76] *Id.*
[77] While effecting the Plaintiffs' arrest and subsequent search warrants not all Defendants wore an official police uniform and did not identify themselves as law enforcement agents during any Plaintiffs' arrest.
[78] PRELIMINARY HEARING TRANSCRIPT

    i.   Loss of enjoyment of freedom;

    j.   Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Sergeant Didonato, Officer McCauley, City of Philadelphia, Officer Ellingsworth, Officer Lister, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Giulian, Officer Taylor, Christopher Brooks, Officer Wright, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, Philadelphia Police Chemists John Doe 1-6, Philadelphia Police Chemists Jane Doe 1-6, Philadelphia Police Officers John Does 1-15, and Philadelphia Police Officers Jane Does 1-15 in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT III – FALSE IMPRISONMENT

138. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

139. At all times relevant hereto, Defendants were acting under and pursuant to the color of law as employees and/or agents acting on behalf and/or pursuant to the supervision of Defendants City of Philadelphia, Sergeant Giulian, Sergeant Didonato, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin.

140. To set forth a claim for False Imprisonment the Plaintiff must establish a person: 1) Detained another person[79]; and 2) the detention's unlawfulness[80].

141. Any detention is unlawful if it is a consequence of a false arrest, including one made without probable cause[81].

---

[79] *Brockington v. City of Phila.*, 354 F.Supp. 2d 563, 572 n.10 (E.D.P.A. 2005)
[80] *Id.*

142. Pennsylvania has a higher standard of protection for personal liberties, rights, and immunities than does the federal requirements[81].

143. The Defendants detained the Plaintiffs when during their respective arrests for an ongoing period.

144. The Defendants detention was unlawful because it was the result of a false arrest and/or made without probable cause.

145. Defendants at all times relevant hereto, acting under the color of law, within their scope of employment, and required duties, knowingly and unlawfully restrained Plaintiffs without probable cause, thereby substantially interfering with the Plaintiffs' liberty, privileges, immunities, and freedom interests.

146. Defendants knowing and unlawful actions caused Plaintiffs unjust incarceration violating their federal and Commonwealth Constitutional rights, privileges, and immunities.

147. Defendants knew it was reasonably foreseeable if Plaintiffs received a future criminal conviction they would receive an improper prior criminal history record score in addition to possible other offense enhancements regarding both Commonwealth and Federal sentencing guidelines based upon an unlawful arrest grossly and shockingly violating his rights, privileges, and immunities.

148. The Defendants knowingly restrained the Plaintiffs while acting under the color of law substantially interfering with his liberties, privileges, and immunities including rights to possess property and not have it appropriated without just compensation, due process, equal protection, prohibition against cruel and unusual punishment, among others.

149. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, Sergeant Didonato, Sergeant Giulian, William Blackburn, Denise Turpin, and

---

[81] *Id.*

[82] *Commonwealth v. Gary*, 586 A.2d 887, 894-95 (Pa. 1991) (At the outset, it is important to recognize that this Court may extend greater protections under the Pennsylvania Constitution than those afforded under the U.S. Constitution)

Charles Ramsey custom and policy to not properly train, supervise, and manage police officers and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    k.  Past and future costs for medical treatment and care;

    l.  Loss of past and future earnings and earning capacity;

    m.  Loss of enjoyment of life;

    n.  Loss of enjoyment of freedom;

    o.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Sergeant Didonato, Officer McCauley, City of Philadelphia, Officer Ellingsworth, Officer Lister, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Giulian, Officer Taylor, Christopher Brooks, Officer Wright, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, Philadelphia Police Chemists John Doe 1-6, Philadelphia Police Chemists Jane Doe 1-6, Philadelphia Police Officers John Does 1-15, and Philadelphia Police Officers Jane Does 1-15 in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).s

## COUNT IV – MALICIOUS PROSECUTION

150. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

151. To set forth a claim for Malicious Prosecution[83] a Plaintiff must show: 1) The Defendant is a State Actor[84], 2) The Defendants initiated a criminal proceeding[85]; 3) The criminal proceeding ended in the Plaintiff's favor[86]; 4) The proceeding was initiated without probable cause[87]; 5) The Defendants acted maliciously or for a purpose other than bringing the Plaintiff to justice[88]; and 6) The Plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding[89].

152. At all times relevant hereto, Defendants were State and Commonwealth actors, acting under and pursuant to the color of law, as employees, appointees, and/or agents acting on behalf and/or pursuant to the supervision of Defendants City of Philadelphia, Sergeant Didonato, Sergeant Giulian, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin.

153. The Defendants initiated a criminal case against all the Plaintiffs via arrest[90].

154. The proceeding initiated by the Defendants against Plaintiff Exor Santiago in his criminal case, ended in his favor on September 25, 2014 when his case was dismissed.

155. The arresting Defendants in the instant case, knowingly lacked probable cause to stop, investigate, arrest, detain, charge, attest, and testify against the Plaintiffs.

156. The Defendants never witnessed a narcotics transaction between Plaintiffs involving them or any other person, especially considering no narcotics were ever recovered from Margarita Santiago, Exor Santiago, nor Alexis Santiago.

157. The Defendants, in particular Officer Hulmes, used a corrupted and unreliable Confidential Informant, if this person actually exists, to secure impermissible evidence, and used it against these Plaintiffs

---

[83] *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3rd Cir. 2003); *Johnson v. Knorr*, 477 F.3d 75, 82 (3rd Cir. 2007); *see Bradley v. General Accident Ins.*, 778 A.2d 707, 710 (Pa. Super 2001).
[84] *Estate of Smith*
[85] *Id*.
[86] *Id*.
[87] *Id*.
[88] *Id*.
[89] *Id*.
[90] CP-51-CR-0003595-2008, CP-51-CR-0011300-2008, CP-51-CR-0006437-2008

collectively and individually to unlawfully and without a warrant search their persons, property, and vehicle.

158. The Plaintiff contends the arresting Defendants fabricated and attested and testified about a confidential informant, who was not identified, questioned, arrested, charged, and/or prosecuted to corroborate and support probable cause to make an arrest these Defendants knew was false.

159. The Defendants knew at the time they arrested and prosecuted Plaintiff, the Commonwealth of Pennsylvania provided a higher standard regarding preserving and protecting Constitutional rights, privileges, and immunities.

160. The Defendants acted with a malicious purpose when they fabricated, attested to, and testified about fraudulent evidence leading to a wrongful conviction and constitutionally violative resultant incarceration for every Plaintiff.

161. The Defendants acted with a malicious purpose when they fabricated, attested to, and testified about fraudulent evidence while acting pursuant to and under the color of law, utilized possession of their firearms to intimidate and place in apprehension and extreme fear of serious bodily injury and/or death the Plaintiffs to provide their personal property to the arresting Defendants against their will and vociferous verbal objections.

162. Falsifying official documents, testifying falsely after the oath requiring honesty is administered and affirmed, and actively concealing these actions to prosecute innocent persons and preserve those already obtained improperly, served no legitimate law enforcement or public welfare purpose and was used as a malicious and an extreme and outrageous event that shocks the conscience of any reasonable person, and is a complete betrayal of the Public's Trust and faith in law enforcement.

163. The Defendants' acts and omissions towards Plaintiffs made them suffer a deprivation of liberty via significant incarceration terms both before and after their sentencing, which is consistent with the concept of seizure as a consequence of a legal proceeding.

164. The Plaintiffs' liberty deprivation occurred for this prong's purposes were the consequence of numerous related legal proceedings from their initial bail hearings until their final trial dispositions.

165. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, Sergeant Didonato, Sergeant Giulian, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    p.  Past and future costs for medical treatment and care;

    q.  Loss of past and future earnings and earning capacity;

    r.  Loss of enjoyment of life;

    s.  Loss of enjoyment of freedom;

    t.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Sergeant Didonato, Officer McCauley, City of Philadelphia, Officer Ellingsworth, Officer Lister, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Giulian, Officer Taylor, Christopher Brooks, Officer Wright, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, Philadelphia Police Chemists John Doe 1-6, Philadelphia Police Chemists Jane Doe 1-6, Philadelphia Police Officers John Does 1-15, and Philadelphia Police Officers Jane Does 1-15 in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

166. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

167. To set forth a claim for Intentional Inflication of Emotional Distress[91] a Plaintiff must demonstrate: 1) The Defendants' conduct was extreme and outrageous[92]; 2) Defendants' conduct was intentional or reckless[93]; 3) Defendants' conduct caused emotional distress[94]; and 4) The distress must be severe[95].

168. The Defendants' conduct is especially egregious, extreme, and shocking because they were all tasked with upholding general society's and the Philadelphia community's public safety, general welfare, order, and laws and instead used those powers to enrich themselves by stealing and misappropriating the Plaintiff's collective property, perpetrate fraud upon the criminal tribunals with their falsified documents and testimony, and the sheer size of their conspiracy.

169. This chain conspiracy has endemically perverted justice throughout the Philadelphia Police Department leading to a massive amount of corruption and abuses of authority leading to thousands of wrongful convictions and the destruction of peaceful life for some of the city's poorest, most at risk citizens, and neighborhoods is extreme and outrageous conduct. The number of families and persons harmed and emotionally scarred and damaged due to these Defendants' actions is currently too incalculably large to determine.

170. The Defendants knew pursuant to the Federal Constitution, the Commonwealth Constitution, and a litany of statutes and case law from both jurisdictions, and that Pennsylvania Courts and the Legislature have established a higher standard of protection for its citizens rights, liberties, privileges, and

---

[91] *Salerno v. Philadelphia Newspapers, Inc.*, 546 A.2d 1168, 1172 (1988)
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *Id.*

immunities, and the Defendants from attesting in police work and testifying in previous cases knew their conduct was unethical, unconstitutional, and illegal clearly intentionally and/or recklessly.

171. All Plaintiffs suffered emotional distress due to Defendants' extreme and outrageous conduct.

172. The Defendants' actions caused the Plaintiff severe distress by imprisoning him, removing almost all his basic rights, freedoms, privileges, and immunities and causing them to miss spending time with his family members and friends, not being able to attend funerals, take care of sick and dying loved ones, miss weddings, and many other live events and milestones.

173. The Defendants' actions also deprived the Plaintiffs the opportunity for obtaining legitimate employment opportunities and additionally caused each Plaintiff, who were working when arrested, to lose their jobs, causing severe emotional trauma and anxiety due to their inabilities to properly provide for their respective families.

174. Plaintiffs suffered severe emotional and psychological consequences and effects due to the Defendants' actions, which caused prolonged incarcerations, a place where the Defendants could reasonably foresee mental health, counseling, and psychological services are extremely limited and oftentimes below acceptable guidelines.

175. The Defendants herein referenced in the above-referenced count caused all Plaintiffs severe emotional distress from their actions including but not limited post-traumatic stress disorder, restlessness, sleeplessness, trauma, shock, fear, anxiety, depression, and numerous other related injuries.

176. The Defendant arresting Police Officers' intentional infliction of emotional distress, their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably,

legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages:

    a.  Past and future costs for medical treatment and care;

    b.  Loss of past and future earnings and earning capacity;

    c.  Loss of enjoyment of life;

    d.  Loss of enjoyment of freedom;

    e.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Sergeant Didonato, Officer McCauley, City of Philadelphia, Officer Ellingsworth, Officer Lister, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Giulian, Officer Taylor, Christopher Brooks, Officer Wright, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, Philadelphia Police Chemists John Doe 1-6, Philadelphia Police Chemists Jane Doe 1-6, Philadelphia Police Officers John Does 1-15, and Philadelphia Police Officers Jane Does 1-15 in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT  VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

177. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

178. To set forth a claim for Negligent Infliction of Emotional Distress the Plaintiff must show one of four factual scenarios: 1) Situations where the Defendant had a contractual or a fiduciary duty toward the Plaintiff[96]; or 2) The Plaintiff was subjected to Physical Impact[97]; or 3) The Plaintiff was in a zone of

---

[96] *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super 2008), *order aff'd by equally divided court*, 36 A.3d 83 (Pa 2011)
[97] *Id.*

danger, thereby reasonably experiencing a fear of impending physical injury[98]; or 4) The Plaintiff observed a tortious injury to a close relative[99].

179. General principles of tort law suggest that Defendants owed Plaintiffs a duty of care under the circumstances because they were acting under the color of law as armed law enforcement agents, with specially enumerated governmental privileges to compel compliance and initiate the legal use of force.

180. The Commonwealth Superior Court indicated the reach of the first type of Negligent Infliction of Emotional Distress claim, relevant here, is limited "'to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach[100].'"

181. There must exist a special relationship between the Plaintiff and Defendant that "'encompass[es] an implied duty to care for the Plaintiff's emotional well-being[101].'"

182. Foreseeability of a Plaintiff's injury "is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate"[102].

183. The test for negligence is one of "reasonable foreseeability"[103].

184. All Defendants were acting under the color of law as armed law enforcement agents, with specially enumerated governmental privileges to compel compliance and initiate the legal use of force and knew and understood utilizing force may be necessary and therefore had a duty to only use the necessary amount of force to achieve their objectives.

185. The Defendants subjected the Plaintiffs to physical impact when they arrested and restraining them with metal handcuffs, searched, and seized their persons, vehicles, and shared home, then placed them

---

[98] *Id*.
[99] *Id*.
[100] *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 218 (Pa. Super 2012)(quoting *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 95 (Pa 2011)(opinion in support of affirmance)
[101] *Id*. (quoting Toney v. Chester Cnty. Hosp., 36 A.3d at 95).
[102]*Carter Lincoln-Mercury, Inc. Leasing Div. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1294 (N.J. 1994)
[103] *Toney v. Chester Cnty*. Hosp., 961 A.2d 192, 199 (Pa. Super 2008) (quoting *Armstrong v. Paoli Mem. Hosp.*, 633 A.2d 605, 608 (Pa. Super 1993)).

into transportation in a locked, inescapable metal bar reinforced police vehicle, and placed them against

their will into jail where no Plaintiff could leave.

186. *Consolidated Rail Corp[104]*, provides the definition for zone of danger rules, and similarly here, at all

times from their initial encounter with the Defendants until they were brought before the Court, the

Plaintiff were in a zone of danger because due to the Defendants violent actions towards all of them in

very close proximity to each other during their respective arrests, in addition to verbal threats and

coercion to prevent disclosing the Defendant's behavior subsequently made, placed every Plaintiff in

immediate risk of physical harm by the Defendants' negligence and frightened each Plaintiff by the risk

harm.

187. The Defendants' actions caused Plaintiff thereby to reasonably experience a fear of impending physical

injury via his proximity to the danger zone.

188. Further, Exor Santiago and Margarita Santiago witnessed each having their Constitutional rights

violated while both were illegally arrested on their curtilage and are closely related as mother and son.

189. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active

participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin

Bethel, Thomas Wright, Sergeant Didonato, Sergeant Giulian, William Blackburn, Denise Turpin, and

Charles Ramsey custom and policy to not properly train, supervise, and manage police officers and

confidential informants utilized therein during illegal narcotic investigations directly, foreseeably,

legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following

damages

    a.  Past and future costs for medical treatment and care;

    b.  Loss of past and future earnings and earning capacity;

---

[104] *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 548 (1994) (holding if the zone of danger rule applies, plaintiffs suing for Negligent Infliction of Emotional Distress may only recover damages if they were [1] "placed in immediate risk of physical harm" and [2] frightened by the risk of harm)

    c.  Loss of enjoyment of life;

    d.  Loss of enjoyment of freedom;

    e.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Sergeant Didonato, Officer McCauley, City of Philadelphia, Officer Ellingsworth, Officer Lister, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Giulian, Officer Taylor, Christopher Brooks, Officer Wright, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, Philadelphia Police Chemists John Doe 1-6, Philadelphia Police Chemists Jane Doe 1-6, Philadelphia Police Officers John Does 1-15, and Philadelphia Police Officers Jane Does 1-15 in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).s

## COUNT VII – CONVERSION

190. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

191. Pursuant to Pennsylvania law, conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification[105].

192. Conversion can result only from an act intended to affect chattel. Specific intent is not required, however, but rather intent to exercise dominion or control over the goods, which is in fact inconsistent with the plaintiff's rights, establishes the tort[106].

---

[105] *Bernhardt v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997); *Shonberger v. Oswell*, 530 A.2d 112 (Pa. Super. 1987); Stevenson v. *Economy Bank of Ambridge*, 197 A.2d 721, 726 (1964).
[106] *Bernhardt v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997)

193. A plaintiff must demonstrate a present possessory right to the chattel in question before plaintiff can claim conversion[107].

194. Money may the subject of conversion[108] and a fiduciary or other trust relationship is irrelevant in determining whether a person converted property[109].

195. The United States currency and property removed from the Plaintiffs' persons, and property was legally possessed and each Plaintiff had a legally protected interest within it[110].

196. When the Defendants removed money from the Plaintiffs and seized other personal property and continue to unlawfully retain it, knowingly utilized these items for their own purposes, with the intent to deprive the owners' of rightful use, ownership, was clearly done without the Plaintiffs' consent and no lawful justification existed for doing so.

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Officer Lister, Officer McCauley, Officer Ellingsworth, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Didonato, Sergeant Giulian, Officer Taylor, Officer Brooks, and Officer Wright, in their individual and personal capacities, individually, jointly, and severally in a compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT VIII – NEGLIGENCE

197. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

---

[107] *Pittsburgh Construction Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. 2003)
[108] *Shonberger v. Oswell*, 530 A.2d at 114; *Bernhardt v. Needleman*, 705 A.2d at 878; *Pearl Assurance Co. v. National Ins. Agency*, 30 A.2d 333, 337 (1943)
[109] *Martin v. National Surety Corp.*, 262 A.2d 672 (Pa 1970)
[110] *Bernhardt v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997)

198. A supervisory official may be liable even where not directly involved in the constitutional violation. The misconduct of the subordinate must be "affirmatively link[ed]" to the action or inaction of the supervisor[111].

199. The personal involvement of a supervisor may be established by showing that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated[112].".

200. Plaintiff allege Defendants Sergeant Didonato and Sergeant Giulian were supervisors who were directly involved and participated with violating duties owed to the Plaintiffs.

201. Defendant Sergeant Didonato and Sergeant Giulian along with other Defendants conspired and actively worked together and shared misappropriated property with one another whenever these acts were done towards innocent civilians including the Plaintiffs.

202. Defendants City of Philadelphia, Sergeant Didonato, Sergeant Giulian, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin failed to remedy the violations committed by subordinate Defendants despite numerous reports regarding malfeasance and abuse of authority submitted to them[113].

203. Defendants City of Philadelphia, Sergeant Didonato, Sergeant Giulian, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin while supervising subordinate Defendants allowed an internally created  and/or custom to not closely supervise, train, oversee, and maintain quality control on the Officers who conducted drug investigations.

---

[111] *Rizzo v. Goode*, 423 U.S. 362, 371 (1976);
[112] *Iqbal v. Hasty*, 490 F.3d 143,152 (2d Cir. 2007) *cert. granted sub nom Ashcroft v. Iqbal*, 128 S. Ct. 2931 (2008)
[113] These materials include but are not limited to Official Citizen Complaints, Internal Affairs Complaints, and Police Board of Inquiry Reports and Findings

204. Defendants City of Philadelphia, Sergeant Didonato, Sergeant Giulian, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin while supervising subordinate Defendants allowed a City policy and/or custom to not closely manage, supervise, conduct integrity checks upon, and/or otherwise utilize reasonable measures to ensure Confidential Informants exist, are reliable, do not falsify evidence, and/or are not serious criminals framing other persons to conceal their criminal activity.

205. Defendants City of Philadelphia, Sergeant Didonato, Sergeant Giulian, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin while supervising subordinate Defendants were grossly negligent in supervising subordinates who committed the violations.

206. Numerous public and private complaints were filed by persons throughout the jurisdiction claiming subordinate Defendants along with numerous other drug enforcement agents were on a wide and pervasive scale depriving suspects of their Federal and Commonwealth Constitutional Rights via property theft, aggravated assault, witness intimidation, false arrest, false imprisonment, assault, robbery, kidnapping, and other related crimes.

207. These complaints and requests for help against the subordinate Defendants conduct to their superiors went unheeded in a grossly negligent manner as these Officers were often exonerated or had charges against them classified as unfounded by the Police Department, Commissioners, superiors, and the Internal Affairs Department.

208. Defendant Commissioner Charles Ramsey has publicly expressed numerous times his inability to effect change within the Philadelphia Police Department via sterner discipline, suspensions, and/or terminations stems from the cost and concessions necessary to satisfy the Fraternal Order of Police Officers' Union.

209. Defendants City of Philadelphia, Sergeant Didonato, Sergeant Giulian, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin were deliberately indifferent

to the Plaintiffs' and others' rights by failing to act on information constitutional rights were being violated by Defendants on a massive scale and instead placed money, political gain, labor peace, lessened controversy, and liability above safeguarding the citizens they were entrusted with protecting all while acting under the color of law.

210. Plaintiffs' injuries were the direct, legal, and proximate result of negligent acts and omissions committed by Defendants.

211. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, Sergeant Didonato, Sergeant Giulian, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    u.  Past and future costs for medical treatment and care;

    v.  Loss of past and future earnings and earning capacity;

    w.  Loss of enjoyment of life;

    x.  Loss of enjoyment of freedom;

    y.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Sergeant Didonato, Officer McCauley, City of Philadelphia, Officer Ellingsworth, Officer Lister, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Giulian, Officer Taylor, Christopher Brooks, Officer Wright, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, Philadelphia Police Chemists John Doe 1-6, Philadelphia Police Chemists Jane Doe 1-6, Philadelphia Police Officers John Does 1-15, and Philadelphia Police Officers Jane Does 1-15 in an official, professional,

individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT IX – DEFAMATION

212. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

213. The Defendants' false attestations contained within the police paperwork and subsequent testimony in a public forum during open court proceedings caused the Plaintiffs injury, anxiety, embarrassment, loss of reputation, and fear and these communications by Defendants tend to harm the Plaintiffs' reputations and injure each of them in business and/or professional opportunities.

214. The falsified evidence, attestations, and testimony numerous times in different circumstances demonstrate these statements and writings about Plaintiff s were not subject to a potential innocent interpretation, which a reasonable person could infer.

215. The Defendants utilized actual malice and published their writings and words to the public with knowledge of their falsity and with a reckless disregard for the truth.

216. The Plaintiffs never consented to the Defendants making any such statements or writings as they did and continue to dispute them.

217. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, Sergeant Didonato, Sergeant Giulian, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably,

legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a.  Past and future costs for medical treatment and care;

    b.  Loss of past and future earnings and earning capacity;

    c.  Loss of enjoyment of life;

    d.  Loss of enjoyment of freedom;

    e.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Sergeant Didonato, Officer McCauley, City of Philadelphia, Officer Ellingsworth, Officer Lister, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Giulian, Officer Taylor, Christopher Brooks, Officer Wright, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, Philadelphia Police Chemists John Doe 1-6, Philadelphia Police Chemists Jane Doe 1-6, Philadelphia Police Officers John Does 1-15, and Philadelphia Police Officers Jane Does 1-15 in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).


## COUNT X – INVASION OF PRIVACY

218. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

219. The Defendants invaded the Plaintiffs' privacy and portrayed them in a false light in the public eye by providing unwanted and negative publicity via falsifying criminal acts, presenting this fake material to a tribunal, and unjustly securing Plaintiffs conviction, extreme, outrageous, and highly offensive conduct.

220. These statements and writings are of no legitimate concern to the public, have no newsworthy value, and simultaneously drain the community's resources and erode its trust towards Government and law enforcement officials.

221. The Defendants actions when improperly searching and seizing Plaintiffs' person, vehicle, and shared home was a highly offensive intrusion of their solitude and enjoyment of peaceful assembly.

222. All Plaintiffs have a reasonable expectation of privacy in their shared home.

223. Alexis Santiago has a reasonable privacy interest in his vehicle.

224. Plaintiff Alexis Santiago had a reasonable expectation of privacy from intrusion upon seclusion when Officers were present inside his vehicle especially because it was secured and never he never consented to his property and/or himself from unjust search and entrance.

225. Plaintiffs Exor Santiago, Margarita Santiago, and Alexis Santiago had a reasonable privacy expectation in their home, its papers, and effects, regardless of their physical presence.

226. The Defendant arresting Police Officers' invasion of privacy, their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, Sergeant Didonato, Sergeant Giulian, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    f.   Past and future costs for medical treatment and care;

    g.   Loss of past and future earnings and earning capacity;

    h.   Loss of enjoyment of life;

    i.   Loss of enjoyment of freedom;

    j.   Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demand judgment against Defendants Christopher Hulmes, James Reilly, Patrick Banning, Sergeant Didonato, Officer McCauley, City of Philadelphia, Officer Ellingsworth, Officer Lister, Officer Lynch, Officer Jones, Officer Flynn, Sergeant Giulian, Officer Taylor, Christopher Brooks, Officer Wright, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, Philadelphia Police Chemists John Doe 1-6, Philadelphia Police Chemists Jane Doe 1-6, Philadelphia Police Officers John Does 1-15, and Philadelphia Police Officers Jane Does 1-15 in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT XII – JURY DEMAND

227. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

228. Plaintiff demand a jury to determine the extent of damages and provide a full and fair hearing pursuant to the United States Constitutional Amendments V, VI, and XIV.

## COUNT XII – PUNITIVE DAMAGES

229. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

230. In awarding punitive damages, "[t]he proper focus is on 'the act itself together with all the circumstances."[114]  The focus, therefore, is on the conduct, not on the excuses offered at trial. Furthermore, " '[p]unitive damages may be awarded for conduct that is outrageous, because of defendant's evil motive or his reckless indifference to the rights of others.' "[115].

231. Defendants' actions in depriving Plaintiff of their rights, freedoms, and liberties is so outrageous as to shock the conscience of reasonable persons and evidence reckless indifference for the Plaintiff's rights.

---

[114] *Rizzo v. Haines,* **520 Pa. 484**, 507, **555 A.2d 58**, 69 (1989).
[115] *Feld v. Merriam,* **506 Pa. 383**, 395, **485 A.2d 742**, 747-48 (1984).

232.  Municipalities and cities are liable for damages flowing from constitutional violations that it caused through the execution of its policy or custom.

233.   The City of Philadelphia did that here by failing to properly train, supervise, investigate, hold accountable, prevent, and arrest a litany of rogue officers with the Narcotics Strike Force[116].

**WHEREFORE**, Plaintiff demands exemplary and punitive damages plus attorneys' fees and costs in an amount in excess of One-Hundred and Fifty–Thousand Dollars ($150,000) against all Defendants, officially, personally, professionally, individually, jointly, and severally.

Respectfully Submitted,


David Wesley Cornish, Esquire
Bar Id No: 310865
Supervising Attorney
Cornerstone Legal Group, LLC
1510 Cecil B. Moore Avenue, Suite 301
Philadelphia, PA 19121
888-313-1385
215-752-6762 (Facsimile)
ATTORNEY FOR PLAINTIFFS

*DATE*: December 14, 2014

---

[116] *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-92 (1978); *see Owen v. City of Independence*, 445 U.S. 622 (1980).

## <u>VERIFICATAION OF COMPLAINT</u>

I, Alexis Santiago, Exor Santiago, and Margarita Santiago, citizens of the United States of

America and residents of Philadelphia County, Pennsylvania, hereby declare that I have read the

foregoing Verified Complaint and the factual allegations therein, and the facts as alleged and true and

correct.

Date:   December 14, 2014

_____

Exor Santiago

_____

Alexis Santiago

_____

Margarita Santiago

Sworn to and subscribed before me this the _____ day of December, 2014

_____

NOTARY PUBLIC

**My Commission Expires**:

_____

# EXHIBIT 1

Redacted Philadelphia Police Department Arrest Report    *Page 2 of 3 PARS*

| Defendant: | last name: | **SANTIAGO** | first name: | **ALEXIS** | EXOR |

Sex: **Male**                                    DOB: **04/12/1976**

**FACTS OF THE CASE:**

NARCOTICS BUREAU ARREST.

ON THURSDAY 4/25/13 AT APPROX. 6:30PM, P/O HULMES#7548 RECEIVED A PHONE CALL AT NSF HQ'S IN REGARDS TO OPEN AIR DRUG SALES AT "D" & INDIANA. P/O HULMES WAS INFORMED OF A H/M WEARING A WHITE AND BLUE GOLF SHIRT AND A H/M WEARING A GREY HOODED TRACK JACKET WITH BLK. PANTS SELLING NARCOTICS AT "D" & INDIANA. INFOR FURTHER STATED THAT THE H/M WEARING WEARING THE BLUE AND WHITE GOLF SHIRT WAS CARRYING A HANDGUN.

AT APPROX. 7:15PM, P/O HULMES#7548 AND P/O REILLY#1784 WERE IN AN UNMARKED VEHICLE AND IN PLAIN CLOTHES INVESTIGATING THE INTERSECTION OF "D" & INDIANA. AS POLICE PARKED AT HURLEY AND INDIANA ST. P/O HULMES OBSERVED A H/F WEARING A BLUE HOODED SWEATSHIRT AND GREY SHORTS (LATER ID'D AS MARYANNA MARTINEZ) IMMEADIATELY POINTED AT THE UNMATRKED VEHICLE. P/O REILLY LEFT THE VEHICLE AS P/O HULMES CONCEALED HIMSELF IN THE BACK. MARTINEZ BEGAN TO YELL TO A GROUP OF FEMALES AND MALES SHE WAS STANDING WITH AT 451 INDIANA "THAT BOY IS A COP, HE LOCKED ME UP". MARTINEZ THEN WALKED E/B ON INDIANA APPROACHED A HEAVY SET H/M WEARING A BLUE AND WHITE POLO SHIRT (LATER ID'D AS EXOR SANTIAGO) AND A H/M WEARING A GREY TRACK JACKET AND BLK. PANTS (LATER ID'D AS JOSHUA MORALES) AND A H/M WEARING A WHITE SHIRT WITH A BLK. SHIRT OVER HIS SHOULDER (LATER ID'D AS ALBERTO MORALES). MARTINEZ BEGAN TO POINT AT P/O REILLY. ALBERTO MORALES IMMEDIATELY CLOTHED BEHIND P/O REILLY WHILE PUTTING THE BLK. SHIRT OVER HIS HEAD. P/O HULMES CONTACTED P/O REILLY VIA- CELL PHONE AND INFORMED HIM MORALES WAS BEHIND HIM ON FOOT. AS MORALES FOLLOWED BEHIND P/O REILLY MARTINEZ, SANTIAGO AND JOSHUA MORALES BEGAN TO STARE AT THE UNMARKED VEHICLE.

IMMEDIATELY AFTER P/O HULMES WAS INFORMED THE ALBERTO MORALES WAS NOW WALKING BACK N/B ON HURLEY ST. AS P/O HULMES NOW OBSERVED MORALES LOOKING IN ALL WINDOWS OF THE UNMARKED VEHICLE. MORALES WALKED BACK TO THE 400 BLK. OF INDIANA WITH MARTINEZ, JOSHUA MORALES AND EXOR SANTIAGO. MARTINEZ WALKED BACK TO THE GROUP IN FRONT OF 451 AS ALBERTO MORALES AND JOSHUA MORALES WALKED TO THE CORNER OF "D" & INDIANA. EXOR SANTIAGO WALKED TO THE FRONT OF 445 INDIANA STANDING WITH A GROUP OF MALES AND FEMALES. SANTIAGO BEGAN TO POINT AT THE UNMARKED VEHICLE WHILE SPEAKING WITH (2) H/M'S. H/M#1 WHO WAS WEARING A RED BLUE SHIRT (LATER ID'D AS ALEXIS ORTIZ) AND H/M WEARING A BLK. HOODED SWEATSHIRT (LATER ID'D AS JOEL DELACRUZ) ALL THREE MALES CONTINUED TO TALK AS THEY CROSSED TO THE SOUTH SIDE OF INDIANA LOOKING AT THE UNMARKED VEHICLE. ORTIZ AND DELACRUZ ENTERED A GOLD MERCURY PA#HWX-2987. AS BOTH WERE ENTERING THE VEHICLE ORTIZ TOLD SANTIAGO "WERE GOING TO CHECK THE AREA". P/O HULMES IMMEDIATELY INFORMED ALL MARKED VEHICLES TO LEAVE THE AREA. EXOR SANTIAGO STOOD AT 445 INDIANA ST. LOOKING E/B.

AT APPROX. 7:25PM, P/O HULMES OBSERVED A W/F WEARING A PURPLE SWEATSUIT (LATER ID'D AS ANNA MARIE WATTERS) APPROACH BOTHALBERTO MORALES AND JOSHUA MORALES. WATTERS HANDED AN UNK. AMOUNT OF USC TO ALBERTO MORALES WHO THEN WENT TO THE CURB LINE OF 400 INDIANA AND RETRIEVED OBJECTS. MORALES THEN HANDED THE OBJECTS TO WATTERS. A DESCRIPTION AND DIRECTION WAS GIVEN TO BACK-UP OFFICERS. P/O MCCAULEY#5026 DID FOLLOW WATTERS OUT OF THE AREA.

BASED ON INFORMATION FROM P/O HULMES, P/O ELLINGSWORTH#5349 DID STOP AND ARREST WATTERS AFTER RECOVERING (1) PACKET OF ALLEGED CRACK WITH A SUPERMAN STAMP. THE NARCOTICS WERE PLACED ON PR#3099557.

AT APPROX. 7:25PM, P/O BANNING INFORMED P/O HULMES THAT THE GOLD MERCURY OPERATED BY ORTIZ AND DELACRUZ WAS NOW DRIVING NORTH AND SOUTH ON SURROUNDING STREETS. THE GOLD MERCURY THEN PARKED AT "D" & INDIANA ON THE N/E CORNER. BOTH EXITED AND APPROACHED BOTH MORALES' ENGAGING BOTH IN CONVERSATION POINTING IN DIFFERENT DIRECTIONS. ORTIZ AND DELACRUZ THEN WALKED W/B ON INDIANA AND APPROACHED EXOR SANTIAGO ENGAGING HIM IN CONVERSATION. ORTIZ AND DELACRUZ WALKED TO THE UNMARKED VEHICLE AND BOTH BEGAN TO LOOK INSIDE. ORTIZ AND DELACRUZ ATTEMPTED TO OPEN THE DRIVERS SIDE AND PASSENGER SIDE DOORS, AS DELACRUZ WAS ASKING IF "HE SEES ANYONE" ORTIZ BEGAN TO TELL DELACRUZ "ITS TOO DARK" ORTIZ THE STATED "I DONT THINK ANYONE IS IN THERE". BOTH WALKED TO THE NORTH SIDE OF INDIANA STANDING WITH SANTIAGO.

AT APPROX. 7:30PM, P/O HULMES OBSERVED A B/M WEARING A MUSLIM GOWN AND GREY HOODED SWEATSHIRT (LATER ID'D AS JOHNATHON DAVIS) APPROACH BOTH MORALES'. DAVIS HANDED AN UNK. AMOUNT OF USC TO ALBERTO MORALES WHO THEN RETRIEVED OBJECTS FROM THE SOUTH SIDE CURBLINE. ALBERTO MORALES HANDED THE OBJECT TO DAVIS WHO THEN WALKED E/B ON INDIANA. P/O BANNING FOLLOWED DAVIS OUT OF THE AREA.

BASED ON INFORMATION FROM P/O HULMES, P/O LISTER#7545 DID STOP AND ARREST DAVIS AFTER RECOVERING (1) PACKET OF ALLEGED CRACK WITH A SUPERMAN STAMP. THE NARCOTICS WERE PLACED ON PR#3099558.

IMMEDIATELY AFTER ORTIZ AND DELACRUZ ENTERED THE GOLD MERCURY WHICH LEFT THE AREA. (ORTIZ DRIVING) A DESCRIPTION WAS GIVEN TO BACK-UP OFFICERS TO STOP THE MERCURY. P/O BANNING FOLLOWED THE MERCURY AS IT DROVE OUT OF THE AREA.

BASED ON INFORMATION FROM P/O HULMES, P/O LYNCH#1386 AND P/O JONES#9851 DID STOP THE GOLD MERCURY PA#HWX-2987. P/O JONES DID ARREST ALEXIS ORTIZ(DRIVER) AFTER CONFISCATING $259.00USC LATER PLACED ON PR#3099560. P/O LYNCH DID ARREST DELACRUZ (PASSENGER) AFTER CONFISCATING $137.00USC LATER PLACED ON PR#3099559.

P/O HULMES ALSO GAVE A DESCRIPTION OF EXOR SANTIAGO TO BACK-UP OFFICERS AS HE PLACED HIS HAND TO HIS NECK AND GAVE A "CUT" MOTION TO BOTH ALBERTO MORALES AND JOSHUA MORALES. EXOR SANTIAGO CONTINUED TO STAND WITH A GROUP IN FRONT OF 445 INDIANA. AS ALBERTO MORALES RETIEVED OBJECTS FROM THE CURBLINE (SOUTH SIDE) OF INDIANA ST. JOSHUA MORALES RETREIEVD OBJECTS FROM THE NORTH SIDE CURBLINE. JOSHUA THEN WALKED W/B ON INDIANA AND REMOVED USC FROM HIS POCKET HANDING IT TO EXOR SANTIAGO. ALBERTO MORALES WALKED N/B ON "D" ST. P/O REILLY WAS ON THE 2900 BLK. OF "D" ST. WATCHING ALBERTO MORALES AT THIS TIME. P/O HULMES GAVE A DESCRIPTION OF ALBERTO MORALES, EXOR SANTIAGO, AND MARRANNA MARTINEZ.

AS BACK-UP OFFICERS CONVERGED ON THE 400 BLK. OF "D" ST. MARTINEZ ENTERED A PROPERTY ON THE BLK. P/O HULMES DIRECTED BACK-UP TO STOP JOSHUA MORALES AS HE BEGAN TO WALK W/B TOWARDS BOUDINOT ST.

BASED ON INFORMATION FROM P/O HULMES, P/O MCCAULEY DID STOP AND ARREST JOSHUA MORALES AFTER RECOVERING (14) PACKETS

# Redacted Philadelphia Police Department Arrest Report

| Defendant: | last name: | **SANTIAGO** | first name: | **ALEXIS** |
|---|---|---|---|---|

**Sex: Male**   DOB: **04/12/1976**

(13) OF ALLEGED HEROIN STAMPED "SURPRISE" WHICH WAS LATER PLACED ON PR#3099561. ALSO CONFISCATED FROM MORALES WAS $97.00USC LATER PLACED ON PR#3099562. AS MORALES WAS BEING PLACED INTO CUSTODY EXOR SANTIAGO ENTERED 445 INDIANA WITH POLICE FOLLOWING BEHIND. AS POLICE ENTERED THE PROPERTY SANTIAGO WAS EXITING THE REAR DOOR. P/O FLYNN#2638, P/O HULMES AND SGT. GIULIAN#8838 AND SGT DIDONATO#8543 ATTEMPTED TO STOP SANTIAGO WHO WAS NOW HIDING IN THE REAR YARD OF 447 INDIANA. AS P/O FLYNN WAS ATTEMPTING TO PLACE SANTIAGO IN CUSTODY AN OLDER H/F WEARING A WHITE COAT (LATER ID'D AS MARGARITA SANTIAGO) JUMPED BETWEEN P/O FLYNN AND EXOR SANTIAGO. MARGARITA SANTIAGO WAS WARNED NUMEROUS TIMES BY POLICE TO LEAVE THE REAR YARD. MARGARITA CONTINUED TO INTERFERE WITH P/O FLYNN AS HE WAS STILL ATTEMPTING TO PLACE EXOR SANTIAGO IN CUSTODY. AFTER NUMEROUS WARNINGS BY POLICE MARGARITA SANTIAGO WAS PLACED IN CUSTODY. EXOR SANTIAGO WAS TURNED OVER TO P/O TAYLOR#5371 WHO CONFISCATED $510.00USC LATER PLACED ON PR#3099564. P/O MCCAULEY DID RECOVER FROM THE REAR YARD OF 445 INDIANA (1) ROCK STAR ENERGY DRINK WITH A FALSE BOTTOM WHICH CONTAINED (1) CLEAR BAGGIE WITH (61) XANNAX ALSO (1) CLEAR BAGGIE WHICH CONTAINED (15) BLK. TINTED PACKETS OF ALLEGED MARIJUANA. THE NARCOTICS WERE PLACED ON PR#3099563.

(14) BASED ON INFORMATION FROM P/O HULMES, P/O REILLY#1784 DID STOP ALBERTO MORALES AS HE CONCEALED HIMSELF BEHIND PARKED VEHICLES AS POLICE CONVERGED ON THE BLK. ALBERTO MORALES WAS TURNED OVER TO P/O WRIGHT#6123 WHO ARRESTED MORALES AFTER RECOVERING ( 1) NEWPORT CIG BOX WHICH CONTAINED (3) PACKETS OF ALLEGED HEROIN STAMPED "SURPRISE" AND (16) PACKETS OF ALLEGED CRACK WITH SUPERMAN SYMBOLS. THE NARCOTICS WERE PLACED ON PR#3099565. ALSO CONFISCATED WAS $126.00USC LATER PLACED ON PR#3099566.

(15) AS POLICE WERE LEAVING THE AREA P/O HULMES NOTIFIED P/O BROOKS THAT MARRYANNA MARTINEZ WAS STANDING ON THE NORTH SIDE OF INDIANA. P/O BROOKS ARRESTED MARTINEZ NOTHING WAS RECOVERED.

(16) ALL DEFENDANTS WERE ID'D BY P/O HULMES#7548